**The RAWLPLUG COMPANY, INC., Plaintiff,**

v.

**HILTI AKTIENGESELLSCHAFT and Hilti, Inc., Defendants.**

No. 87 Civ. 0071 (MJL).

United States District Court, S.D. New York.

Oct. 7, 1991.

---

Seed and Berry by Paul T. Meiklejohn, Seattle, Wash., for plaintiff.

Toren, McGeady & Associates P.C. by David Toren, Peter J. Toren, New York City, for defendant HAG.

Fried, Frank, Harris, Shriver & Jacobson by Sheldon Raab, P.C., New York City, for defendant Hilti, Inc.

## OPINION AND ORDER

LOWE, Senior District Judge.

Before this Court are (1) defendants' motions to dismiss and (2) plaintiff's motion for a preliminary injunction. For the reasons set forth below, plaintiff's motion is denied and defendants' motions are granted.[1]

## BACKGROUND

Plaintiff, the Rawlplug Company, Inc. ("Rawlplug"), is a New York corporation engaged in the manufacture and worldwide sale of fastener devices.[2] Defendant Hilti Aktiengesellschaft ("HAG") is a Liechtenstein corporation, also engaged in the manufacture and sale of fastener devices. Defendant Hilti, Inc. ("HUS") is a New York corporation which sells fastener devices in the United States. HUS has its principle place of business in Tulsa, Oklahoma.

Rawlplug instituted the above-captioned action on January 6, 1987, alleging a single cause of action against defendants, under 35 U.S.C. § 256, for correction of error in the named inventor of U.S. Patent No. 4,289,062 ("Patent 062"). This claim revolves around Rawlplug's relationship with Thomas W. McSherry ("McSherry") who, according to plaintiff's pleadings, acted as a consultant for Die Cast & Forge Corporation ("Die Cast"), a wholly owned subsidiary of Rawlplug, for the purpose of developing fastener devices. Pursuant to an agreement dated December 9, 1975, McSherry agreed to disclose to Die Cast any and all inventions developed by him during the term of his contract and to grant to Die Cast the "exclusive rights and licenses to manufacture, use and sell products and/or methods incorporating such inventions." Agreement at ¶ 4. By a separate letter agreement, Rawlplug agreed to guarantee the performance of Die Cast under the consultancy agreement. Exhibit 4.

---

1. The motions to dismiss which we grant today are granted with respect to the first cause of action of the Amended Complaint. This was the only cause of action alleged in the original complaint, which is the complaint against which the defendants' motions were filed. Defendants may move against the second cause of action as provided at the end of this Opinion.

2. Rawlplug defines fastener devices as "devices for connecting, attaching or fastening, for example, fixtures to a stationary structure such as a wall." Plaintiff's memorandum of Law In Opposition to Motion to Dismiss at 1.

During the course of this agreement, McSherry purportedly developed a fastener called the "C–6 anchor," which invention McSherry, in breach of his alleged duty of confidentiality under the agreement, disclosed to one of Rawlplug's competitors, Mechanical Plastics Corporation ("MPC"). Amended Complaint at ¶¶ 6–8. MPC, in turn, purportedly disclosed the C–6 anchor to personnel at "HAG and/or HUS." In 1981, Erwin Schiefer ("Schiefer") who, according to plaintiff, works for an affiliate of HAG in Germany, was granted Patent 062 which, plaintiff claims, incorporates the C–6 anchor developed by McSherry during the course of McSherry's consultancy agreement with Die Cast. Schiefer continues to be named as the sole inventor of Patent 062, the rights to which were assigned, simultaneously with the patent application, to HAG. Shortly thereafter, HAG allegedly began manufacturing and exporting, and HUS began selling in the U.S., the patented device under the commercial name "Kwik Tog." Since that time, however, the Kwik Tog has been both manufactured and sold in the U.S. by HUS.

Claiming its purported rights under the patented invention, plaintiff seeks from this Court a judgment declaring McSherry to be sole and true inventor of Patent 062 and holding Rawlplug to be the exclusive licensee. Plaintiff also seeks an order "finding and declaring that HAG and HUS hold profits from the sale of all goods manufactured and sold under [Patent 062] in constructive trust for plaintiff [and] granting an accounting of profits from the sale of all goods imported, manufactured, used, and/or sold by HUS and HAG" under the patent.

Subsequent to the filing of its original complaint, the defendant moved for dismissal of the action on virtually every conceivable ground available under Fed.R.Civ.P. 12. Prior to the disposition of these motions, however, plaintiff amended its complaint under Fed.R.Civ.P. 15(a) to include a second cause of action against defendants for infringement of an entirely different patent, U.S. Patent No. 4,330,230 ("Patent 230"). Almost one year later, in February of 1989, plaintiff moved for a preliminary injunction on the basis of this second cause of action.

A hearing on plaintiff's motion for a preliminary injunction was tentatively scheduled in March of 1989. However, given the pendency of defendants' earlier motions which, it was claimed, bore relevance to the injunctive request, this Court adjourned the hearing for a future date. In the interim, we sought further briefing on a number of issues raised by the parties' motions.

## DISCUSSION

### Motions to Dismiss

█ HAG has moved to dismiss on several grounds. Their initial claim is that plaintiff is not entitled to use 35 U.S.C. § 256 to justify an action against HAG. Section 256, as amended in 1982, provides:

Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Commissioner shall issue a certificate accordingly.

35 U.S.C. § 256 (1984).

Defendants' argue that Section 256 should not be interpreted to create an independent private right of action to correct sole inventorship in the absence of litigation involving the validity or infringement of the patent in question. Plaintiff argues that Section 256 does, indeed, allow correction of patents by the substitution of the true sole inventor for the named sole inven-

tor. Because this specific issue has not been addressed by many courts, the parties' base their positions primarily on their differing interpretations of *Dee v. Aukerman,* 625 F.Supp. 1427 (S.D.Ohio 1986).[3]

The court in *Dee* found that 35 U.S.C. § 256 can be interpreted to confer original jurisdiction for adjudication of a *joint* inventorship dispute. 625 F.Supp at 1429. The court also cited with approval the finding of the Ninth Circuit Court of Appeals, which, in addition to holding that Section 256 can be used to correct joint inventorship disputes, held that Section 256 cannot be used to substitute one *sole* inventor for another. *Id.* at 1428. The Ninth Circuit, in *Bemis v. Chevron Research Co.,* 599 F.2d 910 (9th Cir.1979), specifically found:

> The Congressional committee report on § 256 clearly demonstrates that the statute remedies only innocent errors in joinder or non-joinder of inventors.

599 F.2d at 912.[4]

Similarly, the district court in *Rival Mfg. Co. v. Dazey Products Co.,* 358 F.Supp. 91 (W.D.Mo.1973), found that Section 256 is

> "limited to the correction of errors involving true joint inventorship and does not contemplate or permit what would amount to a substitution of one inventor entity for another under the guise of 'correction'...."

358 F.Supp. at 101.

Plaintiff's first cause of action specifically attempts to use Section 256 to correct *sole* inventorship. Paragraph 5 of the Amended Complaint states:

> In this action, plaintiff seeks an order under 35 U.S.C. § 256 to correct U.S. Patent No. 4, 289, 062 by the substitution of Thomas W. McSherry as sole inventor in place of the named inventor, Erwin Schiefer.

Amended Complaint at ¶ 5.

Based on our review of the relevant caselaw, as well as the legislative history of the statute, we decline to expand existing interpretations, however scant, on this subject. Therefore, we find that, because plaintiff has failed to state a cause of action under 35 U.S.C. § 256, Plaintiff's first cause of action must be dismissed. *See also Celestron Pacific v. Criterion Mfg. Co., Inc.,* 552 F.Supp. 612 (D.Conn.1982).[5]

*Preliminary Injunction Motion*

■ Plaintiff's preliminary injunction motion concerns the patent at issue in the Amended Complaint's second cause of action (U.S. Patent No. 4,330,230). This patented product is a device which is used to fasten fixtures to walls and is entitled "Anchor Bolt Assembly." The inventor of this patent, Louis Giannuzzi, granted Rawlplug an exclusive license, in August of 1987, to make and sell this device. During the summer of 1987, Rawlplug became aware that HAG was manufacturing in Europe, and Hilti was selling in the U.S., two anchors ("HSLB" and "HSLG", collectively the "HSL anchors") which allegedly infringe this patent. That discovery prompted Rawlplug to amend its complaint in March of 1988 to include a patent infringement

---

**3.** *Dee* has been cited in this District as well as in the Federal Circuit, which has appellate jurisdiction over patent cases. The Federal Circuit followed the district court's reasoning in *Dee* in *MCV, Inc. v. King–Seeley Thermos Company,* 870 F.2d 1568, 1570 (Fed.Cir.1989). *See also McSherry v. Giannuzzi,* 717 F.Supp. 238, 242 (S.D.N.Y.1989).

**4.** The Congressional committee report to which the court in *Bemis* referred states:

> Section 256 is a new section in the law that ... relates to a mistake in joining a person as a joint inventor. Very often two or three people make an invention together. They must apply as joint inventors. If they make a mistake in determining who are the true inventors, they do so at their peril. This provi-

sion permits a bona fide mistake in joining a person as inventor to be corrected.
H.R. Report No. 1923, 82d Congress, 2d Sess. (1952).

**5.** This Court previously expressed concern regarding the issue of "innocent error," rather than deceptive intention, within the meaning of Section 256. While those concerns remain valid, we find it unnecessary to make definitive findings on that point because we find that the first cause of action fails to state any claim at all under Section 256. Thus, the issue of innocent mistake or deceptive intent is moot.

In addition, given our findings concerning Section 256, we need not address defendants' alternative arguments in their motions to dismiss.

244

cause of action. Rawlplug did not bring this preliminary injunction motion for almost one year because it did not itself begin manufacturing the patented device until November of 1988. The gravamen of Rawlplug's complaint in this motion is that Hilti and HAG have so dominated the expansion anchor market through the sale of their allegedly infringing products that they have virtually created a barrier to the market entry of Rawlplug's patented device.

The law of the Federal Circuit governs a District Court's determination of whether to grant a preliminary injunction under 35 U.S.C. § 283. There are four factors to be considered by the Court: (1) likelihood of success on the merits; (2) irreparable harm; (3) balance of hardships; (4) the public interest. *We Care, Inc. v. Ultra–Mark Int'l Corp.*, 930 F.2d 1567 (Fed.Cir. 1991); *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446 (Fed.Cir.1988); *See also Upjohn Co. v. Medtron Laboratories, Inc.*, 751 F.Supp. 416 (S.D.N.Y.1990). Based on our review of these issues, as initially briefed by the parties and subsequently clarified in further submissions, we find that a preliminary injunction would be inappropriate in this action. The plaintiff has failed to adequately establish any of the required factors to the extent necessary for the issuance of so drastic a remedy. Thus, we decline to exercise our discretion on this point. *See We Care, Inc. v. Ultra–Mark Int'l Corp.*, 930 F.2d at 1570; *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1578 (Fed.Cir.1983).

CONCLUSION

For the reasons stated above, plaintiff's first cause of action is dismissed and plaintiff's motion for a preliminary injunction is denied. Because the Amended Complaint was filed after the motions to dismiss, defendants have not fully briefed their motions to dismiss with respect to the second cause of action for patent infringement. If defendants wish to move for dismissal of the remainder of the Amended Complaint, such motion shall be made within sixty (60) days of the date of this Opinion. If no

motion is submitted, discovery in this action shall be completed on or before February 1, 1992 and a joint pre-trial order shall be submitted on or before April 1, 1992.

It Is So Ordered.