Robert McMURRAY, Plaintiff,

v.

John HARWOOD, Advanced Shoe Technology, Inc., and Harwood Companies, Incorporated, Defendants.

No. 93–C–836.

United States District Court,
E.D. Wisconsin.

Sept. 9, 1994.

Decision Denying Reconsideration
Dec. 14, 1994.

David L. DeBruin, Kravit Gass & Weber, S.C., Milwaukee, WI, for plaintiff.

Dean P. Laing, O'Neil, Cannon & Hollman, S.C., Milwaukee, WI, for defendant John Harwood.

Mark A. Phillips, Brookfield, WI, for defendants Advanced Shoe and Harwood Companies.

## DECISION AND ORDER

RANDA, District Judge.

This lawsuit concerns plaintiff Robert McMurray's ("plaintiff") allegation that his former employer John Harwood ("Harwood") procured a patent for a toe-cap and wrongly identified himself (Harwood) as the sole inventor. The complaint asserts that this is a "case arising under the patent laws of the United States pursuant to 28 U.S.C. § 1331 & 1338(a)." (Complaint at 2). More specifically, plaintiff's sole federal claim is based on 35 U.S.C. § 256. The remaining pendant state law causes of action include: a claim under the Uniform Trade Secrets Act (Claim 2); unjust enrichment (Claim 3); interference with prospective advantage (Claim 4); intentional misrepresentation (Claim 5); and breach of fiduciary duty (Claim 6). After a review of the complaint, it is clear that plaintiff's alleged federal claim must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). Therefore, the Court is without subject matter jurisdiction to entertain the remaining state law claims.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was employed as a salesman by Harwood & Associates sometime in 1988. Harwood & Associates is a Wisconsin corporation which serves as a sales agent or manufacturer's representative for other companies. Sometime in 1990, plaintiff and Harwood discussed plaintiff's prior work on the development of a protective plastic toe-cap. Plaintiff asked Harwood if he would be interested in providing financial support for continued research and development. Thereafter, plaintiff allegedly invented a toe-cap design and composition, or rather, a method for producing the toe-cap by injection molding. (Complaint at ¶ 13). In March of 1991, plaintiff and Harwood retained a patent attorney allegedly to determine whether the invention was patentable. On November 26, 1991, Harwood filed an application for the invention. In July of 1992, Harwood terminated plaintiff's employment with Harwood & Associates. In December of 1992, plaintiff sought separate legal counsel in an effort to protect his interests. On February 12, 1993, plaintiff filed his own application with the Patent and Trademark Office ("PTO") identifying himself as the original, first, and sole inventor. (Complaint at ¶ 20).

On May 18, U.S. Patent No. 5,210,963 issued naming Harwood as the only inventor despite the fact that Harwood had allegedly represented to plaintiff that he had been "named" in the original application. (Complaint at ¶ 21; Exhibit A). The status of plaintiff's patent application of February 12, 1993 is unknown.

On August 6, 1993, plaintiff commenced this suit invoking the Court's federal question jurisdiction under 28 U.S.C. § 1331 and 1338. As set forth above, plaintiff's sole federal claim is premised upon 35 U.S.C. § 256. In addition, plaintiff has invoked this Court's pendant jurisdiction over the five state law claims. Plaintiff's first claim for relief seeks:

> a judgment declaring that he is the original, first, and sole inventor of the subject matter disclosed and claimed in the 963 Patent ordering the correction of the 963 Patent to identify McMurray as the inventor and to delete Harwood as the inventor, and declaring that McMurray is the sole owner of the 963 Patent.

Complaint at ¶ 28.

## ANALYSIS

"It is within the power of a district court to dismiss a claim sua sponte; federal question jurisdiction requires the presentation of a 'substantial' federal question." *Crosby v. Holsinger,* 816 F.2d 162, 163 (4th Cir.1987) (citations omitted); *see also Richard Hoffman Corporation v. Loews Merrillville Cinemas, Inc.,* 758 F.Supp. 1258, 1262 (N.D.Ill. 1991). "The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged. Because federal judges are not subject to direct check by any other branch of government—because the only restraint on our exercise of power is self-restraint—we must make every reasonable effort to confine ourselves to the exercise of those powers that the Constitution and Congress have given us." *Wisconsin Knife Works v. National*

*Metal Crafters,* 781 F.2d 1280, 1282 (7th Cir. 1986).

Plaintiff's first cause of action seeks a declaration that he, not Harwood, is the "original, first, and sole inventor" of Patent No. 5,210,963. Because 35 U.S.C. § 256 plainly does not permit the remedy plaintiff seeks, the complaint fails to invoke this Court's federal question jurisdiction, and the first claim for relief must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). Section 256 provides:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without deceptive intention on his part, the Commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.
>
> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Commissioner shall issue a certificate accordingly.

While there are not many cases which discuss the scope of this section, those that have, uniformly agree that it may not be used to substitute one sole inventor for another. *Rawlplug Co. v. Hilti Aktiengesellschaft,* 777 F.Supp. 240 (S.D.N.Y.1991); *Eldon Industries, Inc. v. Rubbermaid, Inc.,* 735 F.Supp. 786 (N.D.Ill.1990); *Celestron Pacific v. Criterion Mfg. Co.,* 552 F.Supp. 612 (D.Conn.1982); *Bemis v. Chevron Research*

*Co.,* 599 F.2d 910 (9th Cir.1979) *cert. denied,* 444 U.S. 966, 100 S.Ct. 454, 62 L.Ed.2d 378 (1979); *Rival Mfg. Co. v. Dazey Products Co.,* 358 F.Supp. 91 (W.D.Mo.1973). *See also Dee v. Aukerman,* 625 F.Supp. 1427, 1429 (S.D.Ohio 1986) (holding that § 256 "seems to indicate a congressional interest in resolving inadvertent mistakes with respect to joint inventorship ...".) In *Rival Mfg.,* the court held that § 256 is:

> limited to the correction of errors involving true joint ownership and does not contemplate or permit what would amount to a substitution of one inventor entity for another under the guise of 'correction' ...

*Id.* at 101.

Similarly, the court in *Bemis* noted that the congressional committee report on § 256 "clearly demonstrates" that the statute remedies only innocent errors in joinder or nonjoinder of inventors. *Id.* at 912.[1] Far from seeking a remedy for an innocent error, plaintiff in this case alleges that Harwood committed a fraud on the PTO by applying for the patent under his own name. In this regard consider the following: "[s]ection 256 thus provides a remedy for innocent errors where the name of an inventor was inadvertently deleted or joined in the design patent. (citation omitted) This section does not deal with fraud on the PTO, Rubbermaid's theory here." *Eldon Industries supra* at 817, n. 16, citing *Bemis.*[2]

Plaintiff's complaint clearly alleges that he is the sole inventor of the subject patent. He does not seek to "correct" the patent to reflect "joint inventorship". Rather, plaintiff seeks a declaration that he is the "inventor of the invention disclosed and claimed in the 963 Patent" and a "certificate of correction of inventorship be made to identify McMurray as the sole inventor of the 963 Patent."

---

1. As a general rule, this Court does not believe it wise to employ legislative history. However, when, as here, it comports with the *plain language* of the statute, it is difficult to ignore. That being said, H.R. Report No. 1923, 82 Congress, 2d Sess. (1952) provides, "This provision permits a bona fide mistake in joining a person as inventor to be corrected."

2. *General Electric Co. v. Brandon,* 25 U.S.P.Q.2d 1885, 1887 n. 1 & n. 3, 1992 WL 394933 (N.D.N.Y.1992) distinguishes *Bemis* and *Rawl-*

*plug infra* and notes that § 256 was amended subsequent to those decisions. But the amended § 256 does not alter the central holding of *Bemis* and its progeny, i.e., that § 256 is intended to correct "innocent errors". As stated in *Brandon:* "[A]t a minimum there must be a lack of deceptive intention on the part of the person originally named as the inventor." *Id.* at 1887. In *Brandon,* as in the case at bar, the plaintiff alleged wrongful and deceptive conduct by the defendant.

(Complaint at page 14). Based on a plain reading of § 256, and the uniform construction given that section by the case law, plaintiff's first claim for relief must be dismissed.

Having dismissed plaintiff's only federal claim, and there being no diversity between the parties, the Court is without jurisdiction to entertain the remaining state law claims. When the federal claim is "dismissed before trial, even though not insubstantial in the jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *see also Slunt v. Mercury Marine,* 983 F.2d 1073 (7th Cir. 1993); *Busse v. Gelco Express Corporation,* 678 F.Supp. 1398 (E.D.Wis.1988) (Stadtmueller, J.).

**NOW THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's first claim for relief is dismissed pursuant to Fed.R.Civ.P. 12(b)(6); and

2. The Court being without subject matter jurisdiction to entertain the remaining state law claims, Case No. 93–C–836 is **DISMISSED** without prejudice.

## DECISION AND ORDER ON RECONSIDERATION

This matter comes before the Court on plaintiff Robert McMurray's ("plaintiff") motion, pursuant to Fed.R.Civ.P. 59(e), seeking reconsideration of the Court's September 9, 1994 Decision and Order dismissing the above captioned case. For the reasons set forth below, the motion is denied.

## ANALYSIS

Consideration of a motion to alter or amend under Rule 59(e) is left to the sound discretion of the trial court. *Leigh v. Engle,* 723 F.Supp. 1272 (N.D.Ill.1989). A Rule 59(e) motion may not be used to re-litigate matters already disposed of by the trial court. *In re Oil Spill by Amoco Cadiz,* 794 F.Supp. 261 (N.D.Ill.1992); *United States v.*

*Western Electric Co.,* 690 F.Supp. 22 (D.D.C. 1988). Instead, reconsideration under Rule 59(e) is permitted in three limited situations: (1) there has been an intervening change in controlling law; (2) there exists new evidence previously unavailable; or (3) clear errors of law require correction or manifest injustice must be prevented. *Deutsch v. Burlington Northern R. Co.,* 983 F.2d 741 (7th Cir.1992) *cert. denied,* —— U.S. ——, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993).

The Court dismissed plaintiff's federal claim, brought pursuant to 35 U.S.C. § 256, after determining that § 256 was limited to the correction of "innocent errors" and did not permit the substitution of the fraudulently named inventor with that of the innocent inventor. (Decision and Order at 5). Contrary to the plaintiff's argument on reconsideration, the focus of the Court's ruling was not that § 256 permitted correction only in situations of misjoinder or non-joinder of co-inventors. Instead, the Court focused on a plain reading of the statute which permits a court to "order correction" of an "error." Therefore, as the Court noted in footnote 2, the 1982 amendments which have been interpreted to permit the substitution of the erroneously named person with the innocent sole inventor, did not overturn prior (and subsequent) authority which uniformly holds that § 256 does not permit "correction" where the named person is accused of deception or fraud.

None of the cases cited by the plaintiff are contrary to this ruling. Plaintiff's reliance on *In re Bennett,* 766 F.2d 524 (Fed.Cir.1985) is misplaced. That case simply acknowledges that, after the 1982 amendments, § 256 has been interpreted to permit the substitution of one true inventor for the named inventor. *Id.* at 528. But as discussed above, this was not the basis for the Court's dismissal of the § 256 claim. While the Federal Circuit made numerous references to the "remedial nature" of § 256 and that "conversion of inventorship should be liberally allowed," it is silent on the issue at bar.[1]

---

1. The repeated references to the "liberal" or "remedial" nature of § 256 support this Court's interpretation that only "innocent" errors be cor-

rected. For example, the language of the statute requires the "application of all parties." It is unlikely, to say the least, that a party who has

Plaintiff's citation to *Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570 (Fed.Cir.1994) is equally unavailing. While plaintiffs are correct that *Stark* is factually similar to the case at bar in that a § 256 claim was joined with state claims of unjust enrichment, breach of the duty of good faith, misappropriation, etc., the Federal Circuit's decision does not address the issue at bar.

In *Stark*, the district court granted summary judgment to the defendant after finding that the plaintiff failed to exercise diligence in seeking correction of the patents at issue. *Id.* at 1573. The Federal Circuit reversed because of the distinction the Code of Federal Regulations makes between § 116 and § 256 cases.[2] After examining 37 C.F.R. § 1.48, applicable to § 116, and 37 C.F.R. § 1.324, applicable to § 256, the Federal Circuit concluded that § 1.324 did not contain the "diligence requirement" found in § 1.48. *Id.* at 1574. While the plaintiff in *Stark* alleged that he was "deliberately misled," the Federal Circuit never examined whether § 256 recognized such a claim because it reversed on the ground stated above. While plaintiff interprets this to mean that the Federal Circuit *might* recognize a § 256 claim based on fraud or deception, plaintiff has presented no authority contrary to this Court's interpretation. Accordingly, none of the cited cases present a basis for the Court to reconsider its prior Decision and Order.

Finally, plaintiff requests permission to proceed with alternative theories under § 256. Specifically, plaintiff seeks to present to the "fact-finder" the alternative theory that Harwood "inadvertently mistook himself to be the inventor." (reply at 7, n. 6). Such a claim is so contrary to plaintiffs' original § 256 claim (and each state theory)[3] that it can hardly be deemed "alternative." Fur-

ther, plaintiff's § 256 fraud claim would not be presented to the jury in any case because it has been dismissed as a matter of law. Plaintiff's request must be denied. Accordingly, plaintiff's motion to reconsider pursuant to Rule 59(e) is denied.

**NOW THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Plaintiff's motion to reconsider and vacate judgment is **DENIED.**

**SO ORDERED,**

engaged in fraud or deception would join in such an application. The "liberal" quality of the section derives from the fact that "innocent" errors should be easily and readily correctable on joint application. Not so where the parties are at each others' throats. Further, pursuant to § 256, the court may "order correction of the patent." Should the plaintiff demonstrate fraud, the patent would be *per se* invalid. Even the most "liberal" reading of § 256 can not turn the power to correct into the power to invalidate.

2. Section 116 is virtually identical to § 256 with the exception that it pertains to corrections made during the "application" process. Section 256, by contrast, pertains to corrections made after the patent is "issued."

3. The state law claims included: a claim under the Uniform Trade Secrets Act (Claim 2); unjust enrichment (Claim 3); interference with prospective advantage (Claim 4); intentional misrepresentation (Claim 5); and breach of fiduciary duty (Claim 6).